O

# AMENDED on 7/24/14
# (Corrects Proceeding Line)

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No. SACV 13-1934-DOC (ANx)            Date: July 22, 2014

Title: INGRAM MICRO INC. V. SIGNEO INT'L, LTD. ET AL.

PRESENT:    THE HONORABLE DAVID O. CARTER, JUDGE

| Julie Barrera | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

PROCEEDINGS (IN CHAMBERS):    AMENDED - ORDER GRANTING MOTION TO ENJOIN ARBITRATION PROCEEDINGS [52] AND HOLDING IN ABEYANCE MOTION FOR DEFAULT JUDGMENT [45]

      Before the Court is Plaintiff's Motion to Enjoin Defendants from Participating in Arbitration Proceedings (Dkt. 52). The Court finds this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the moving papers, the Court GRANTS Plaintiff's Motion to Enjoin Defendants from Participating in Arbitration Proceedings.

    **I.**     **BACKGROUND**

       **a. Contractual History**

      Signeo International and Signeo USA (collectively, "Signeo") manufacture consumer electronics, including the "SOUL"/ "SOUL by Ludacris" line of headphones. Compl. ¶ 6 (Dkt. 1). On or around December 22, 2010, Signeo entered into a Program

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-1934-DOC (ANx)            Date: July 22, 2014

Page 2

---

Agreement (the "2011 Program Agreement") with Plaintiff Ingram Micro, Inc. ("Ingram Micro"), under which Ingram Micro acted as a distributor for Signeo's headphones to retailers worldwide. Compl. ¶ 8. The agreement contained an arbitration provision, subjecting to arbitration any dispute arising out of or related to the 2011 Program Agreement.[1]

In 2012, Signeo and Ingram Micro enacted a new Program Agreement (the "2012 Program Agreement"). Compl. ¶ 12. While it expressly incorporated parts of the 2011 Program Agreement, it did not contain an arbitration provision. Declaration of Mark K. Slater in Support of Motion to Enjoin or Stay Arbitration ("Slater Decl."), Ex. D at Attachment 2 (Dkt. 10-8). In the fall of 2012, disputes arose regarding the return and payment procedure outlined in the contract. Compl. ¶¶ 13-15. In December 2012, the parties began negotiating a resolution, which led to a separate Settlement Agreement on or about March 5, 2013. Slater Decl., Ex. D at Attachment 4 (Dkt. 10-4).

The Settlement Agreement released all claims between the parties arising from their business relations up to that date. *Id.* Further, similar to the 2012 Program Agreement, the Settlement Agreement superseded all prior agreements between the parties.[2]

Thereafter, Signeo breached the Settlement Agreement, and the parties entered into Amendment One of the Settlement Agreement (the "Amended Settlement Agreement"). *Id.* at Attachment 5 (Dkt. 10-3). This agreement, too, did not contain an arbitration provision. *See id.* Between July and September 2013, Signeo breached the Amended Settlement Agreement by failing to send Ingram Micro product samples. Compl. ¶ 30. When they sent the samples, the samples were of unacceptable quality for

---

[1] The full arbitration provision reads: "Any dispute arising out of or relating to this Agreement or the obligations hereunder will entitle either party to notify the other party and require that such dispute be subject to binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association. Notwithstanding anything to the contrary herein, a party may immediately seek a preliminary injunction or other preliminary judicial relief if in its judgment such action is necessary to avoid irreparable damage. The exclusive venue for such arbitration or request for preliminary judicial relief and formal legal action shall be the State and Federal Courts in Orange County, California." Slater Decl., Ex. D at Attachment 1, ¶ 8.

[2] The merger provision of the Settlement Agreement reads: "The Parties hereby shall mutually forever release, acquit and discharge . . . all claims of any kind and character arising under any and all circumstances existing on or before the execution of this Agreement, which either Party now has, owns, or holds, or at any time heretofore or hereafter ever had, owned, or held, arising out of, connected with, or incidental to and any other claims arising out of or related to the Parties' business transactions and the 2011 Program Agreement and 2012 Agreement." Slater Decl., Ex. D at Attachment 4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-1934-DOC (ANx)            Date: July 22, 2014
                                                                             Page 3

sale. *Id.* As a result, Ingram Micro brought suit against Signeo for harming Ingram Micro's sales. *Id.* ¶¶ 39-40.

### b. Procedural History in the Instant Case

On November 13, 2013, Ingram Micro brought suit against Signeo in the Superior Court of California, County of Orange, for breach of the Amended Settlement Agreement and the covenant of good faith and fair dealing. After removing the case to this Court, Signeo's counsel proposed arbitration in Orange County on January 24, 2014. Despite Ingram Micro's willingness to consider arbitration and attempted communications with Signeo regarding the matter, Signeo said nothing further to Ingram Micro on the matter until it unilaterally filed its Demand for Arbitration on April 14, 2014. Slater Decl. ¶¶ 3-6, 13.

In its Demand for Arbitration, Signeo alleges breaches of the parties' 2011 Program Agreement, 2012 Program Agreement, Settlement Agreement, and Amended Settlement Agreement. Slater Decl., Ex. D. In the same demand, however, Signeo only seeks relief for damages under the 2012 Program Agreement, the Settlement Agreement, and the Amended Settlement Agreement. *Id.* It does not pursue claims arising from the 2011 Program Agreement. *Id.* As grounds for arbitration, though, Signeo relies exclusively on the arbitration provision included in the 2011 Program Agreement. *Id.* Ingram Micro has informed Signeo that the 2011 Program Agreement does not provide jurisdiction over the matter. Slater Decl. ¶ 15.

Though Signeo appears to be communicating with Ingram Micro's counsel regarding arbitration, it has not filed anything in this court since February 28, 2014. On April 25, 2014, upon Ingram Micro's request, the Court's clerk entered default against Signeo. Signeo has remained silent in response to this, and to Ingram Micro's subsequent Motion for Default Judgment. Similarly, Signeo has not opposed the instant Motion to Enjoin Arbitration.

### II. LEGAL STANDARD

A district court may enjoin arbitration proceedings that are not governed by a valid and binding arbitration agreement. 3 Fed. Proc., L. Ed. § 4:5. A preliminary injunction to enjoin arbitration proceedings may be granted if the moving party meets the requirements for preliminary injunctive relief. *See Textile Unlimited, Inc. v. A..BMH & Co.*, 240 F.3d

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-1934-DOC (ANx)　　　　　　　　　　　Date: July 22, 2014
　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 4

---

781, 786 (9th Cir. 2001) (applying the preliminary injunction requirements to assess plaintiff's motion to enjoin arbitration). These requirements are as follows: (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury if the injunction is denied, (3) a balance of hardships favoring the moving party, and (4) advancement of public interest. *Id.* In the Ninth Circuit, "the moving party may meet its burden by demonstrating either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor." *Id.* (quoting *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1201 (9th Cir. 1980). A "serious question" is characterized as one as to which the moving party has a fair possibility of succeeding on the merits. *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984).

### III.　DISCUSSION

#### a. Success on the Merits

In reviewing the standard for an injunction in relation to Ingram Micro's Motion, the Court considers the likelihood that Ingram Micro will succeed on its argument that the matter is not appropriate for arbitration. Ingram Micro argues that the Court decides arbitrability and that no written agreement to arbitrate governs Ingram Micro's claims. The Court agrees.

#### i. The Court Determines Arbitrability

In considering a motion to enjoin arbitration, the general question becomes whether the parties objectively revealed an intent to submit the arbitrability issue to arbitration. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). A court should not assume that the parties agreed to arbitrate arbitrability in the absence of clear and unmistakable evidence that they did so. *Id.* Given a contract, clear and unmistakable evidence of intent to arbitrate arbitrability does not exist where an arbitration provision has been excluded from superseding agreements. *See Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 784 (10th Cir. 1998) (finding the question of arbitrability ambiguous where a previous arbitration agreement is excluded from a superseding settlement agreement); *cf. 1mage Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1059 (10th Cir. 2006) (incorporating the arbitration provision into a subsequent

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-1934-DOC (ANx)            Date: July 22, 2014
                                                                                          Page 5

contract where the merger clause explicitly includes the agreement containing the arbitration provision).

       A court has the duty to determine the arbitrability of the dispute. Where the question of arbitrability is focused only on the arbitration provision, and not on the agreement as a whole, the federal courts must decide whether the provision is invalid or unenforceable under the Federal Arbitration Act (FAA). *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1264 (9th Cir. 2006). Here, the question is whether the arbitrability provision is applicable to the issues raised by Signeo in its Demand for Arbitration. Because this focuses on the arbitrability of the provision rather than the entire contract, this Court has the jurisdiction to consider the success of the arbitrability question on its merits.

### ii. No Contractual Agreement to Arbitrate

       Ingram Micro argues that Signeo's claims are not subject to arbitration because subsequent agreements both superseded the 2011 Program Agreement, the only contract containing an arbitration provision, and extinguished any claims arising from the 2011 Program Agreement. The Court agrees.

       Arbitration, as a matter of contract, cannot be forced upon a party in the absence of an arbitration agreement. *AT&T Techs, Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). Claims arising from an agreement without an arbitration clause are not subject to arbitration, even when brought in conjunction with claims arising from a separate arbitrable agreement. *See Riley*, 157 F.3d at 784 (releasing claims from arbitration where they arose from a settlement agreement lacking an arbitration provision or where it was not clear from which agreement they arose, while retaining those claims that clearly arose from the manufacturing agreement containing an arbitration provision). *Cf. Thaning v. UBS/Paine Webber*, No. C 07-5528, 2008 WL 2024884, at *3 (N.D. Cal. May 8, 2008) ("[I]n order to prevail on this theory [of a superseding agreement], the arbitration provision must be negated expressly or by clear implication.").

       Here, because the 2011 Program Agreement has been superseded, its arbitration provision cannot subject Signeo's claims to arbitration. In *Riley*, the parties contracted into a settlement agreement, which explicitly superseded all prior agreements between the parties, which including a manufacturing agreement. 157 F.3d at 778. Similarly, here, the Settlement Agreement explicitly superseded all prior agreements between Signeo and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-1934-DOC (ANx)            Date: July 22, 2014
                                                                                            Page 6

Ingram Micro. Slater Decl., Ex. D at Attachment 4. The court in *Riley* found that the subsequent settlement agreement created ambiguity on the question of arbitrability, which was best left to the courts to decide. *Riley*, 157 F.3d at 780-81. Like the court in *Riley*, this Court finds that the ambiguity on the matter of arbitrability created by the Settlement Agreement, as well as the later agreements, illustrates Ingram Micro's likelihood of success on the merits.

Further, to the extent that Signeo may try, Signeo cannot bring claims under the 2011 Program Agreement because, as part of the Settlement Agreement, both parties released any claims "arising out of, connected with, or incidental to and any other claims arising out of or related to the Parties' business transactions and the 2011 Program Agreement and 2012 Agreement." Slater Decl., Ex. D at Attachment 4. Just as in *Riley*, where the claims extinguished by the settlement agreement's mutual release were not subject to arbitration, Signeo's claims arising under the 2011 Program Agreement have been released and therefore are not subject to arbitration.

### iii. Waiver of Right to Arbitrate

Ingram Micro also argues that Signeo has waived its right to arbitration. Because there is no contractual agreement to arbitrate, the Court does not need to consider this question to determine the likelihood that Ingram Micro will succeed on the merits.

### b. Irreparable Injury

Ingram Micro argues that, without injunctive relief, it will be irreparably harmed because it will be forced to proceed with arbitration. The Court agrees.

Forcing a party to submit to arbitration, when it did not agree to do so, constitutes per se irreparable harm. 3 Fed. Proc., L. Ed. § 4:31; *see Paine Webber, Inc. v. Hartman*, 921 F.2d 507, 515 (3d Cir. 1990) (holding that per se irreparable harm exists where an injunction was not entered prior to the court's determination of the arbitrability of plaintiff's claims). Irreparable injury is shown because, absent the injunction, a party would have to expend time and resources defending itself in arbitration. *Pension Plan for Pension Trust Fund for Operating Eng's v. Weldway Const., Inc.*, 920 F. Supp. 2d 1034, 1041, 1049 (N.D. Cal. 2013). The plaintiffs in *Pension Plan* argued, and the court agreed, that forcing the plaintiffs to incur the costs of preparing two separate procedural tracks, absent injunction, would irreparably injure plaintiffs. 920 F. Supp. 2d 1034, 1041,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-1934-DOC (ANx)            Date: July 22, 2014
                                                                                Page 7

---

1049 (N.D. Cal. 2013). Like the plaintiffs in *Pension Plan*, Ingram Micro will incur costs of both defending itself in trial and arbitration if the injunction is denied. Therefore, the Court agrees with Ingram Micro that it would suffer irreparable harm.

### c. Balance of Hardships

Ingram Micro argues that the balance of equities favors enjoining arbitration because compelling arbitration would irreparably harm Ingram Micro while providing no benefits to Signeo. The Court agrees.

An injunction is favored where the harm to the plaintiffs if the injunction is denied outweighs any potential harm to the defendants if the injunction is granted. *Los Angeles Mem'l Coliseum Comm'n*, 634 F.2d at 1203; *see OppenheimerFunds Distrib., Inc. v. Liska*, No. 11-CV-1586, 2011 WL 5984036, at *5 (S.D. Cal. Nov. 28, 2011) (finding the balance of equities to favor the plaintiff where, without an injunction, the plaintiff "would be forced to spend resources to defend itself in an arbitration proceeding to which it may later be determined to not have been a proper party"). In *Charles Schwab v. Reaves*, the court found that the balance of equities favored granting the injunction where plaintiff would be forced to spend time and resources defending its claims in arbitration and the defendants would not benefit from arbitration. No. CV-09-2590, 2010 WL 447370, at *8 (D. Ariz. Feb. 4, 2010). Here, an injunction will force Signeo to litigate the case before this Court, as opposed to in an arbitral forum. This would cause irreparable injury to Ingram Micro in the form of costs and resources, without creating any recognized benefit for Signeo. Therefore, like the court in *Charles Schwab*, the Court finds the balance of hardships to favor granting the Motion.

### d. Advancement of Public Interest

Ingram Micro argues that public interest favors granting the injunction. The Court agrees.

The Ninth Circuit has held that, although there is a federal policy favoring arbitration, this policy is inapposite when considering whether a particular party is bound by an arbitration agreement. *Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006) (declining to apply the liberal federal policy favoring arbitration where the question is whether a party is bound to arbitration instead of whether a particular issue is arbitrable). In *OppenheimerFunds*, no agreement existed between the parties because

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 13-1934-DOC (ANx)            Date: July 22, 2014
                                                                            Page 8

---

the plaintiff was not a customer of the defendant's business. 2011 WL 5984036, at *6. Absent an arbitration agreement, the court held that the public interest weighed in favor of granting the injunction to enjoin arbitration since the FAA does not require parties to arbitrate where they have not agreed to do so. *Id.* at *6 (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. Of Leland Stanford Jr. Univ.*, 489 U.S. 468, 478 (1989)). Because the Court has determined that the parties have not explicitly agreed to arbitration, similar to *Oppenheimer Funds*, the Court also finds that public interest favors an injunction.

## IV.    MOTION FOR DEFAULT JUDGMENT

Ingram has also filed a motion for default judgment against Signeo (Dkt. 45). Because the filings in support of the motion to enjoin arbitration show that Signeo is at least communicating with Ingram in some way at this time, the Court declines to enter default judgment against Signeo. *See Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986) ("[D]efault judgments are ordinarily disfavored. Cases should be decided upon their merits whenever reasonably possible.").

## V.    DISPOSITION

For the reasons explained above, the Court GRANTS Plaintiff's Motion to Enjoin Defendant from Arbitration Proceedings.

The Court is aware, however, that Signeo has refused to participate in this litigation for months. Therefore, Signeo must file a responsive pleading in this case within thirty days of the date of this order.

The Court HOLDS IN ABEYANCE the Motion for Default Judgment. Should Signeo fail to timely file a responsive pleading or other document indicating participation in this litigation, the Court will consider default judgment.

The Clerk shall serve a copy of this minute order on counsel for all parties in this action.

MINUTES FORM 11
CIVIL-GEN                                                                             Initials of Deputy Clerk: jcb